OPINION OF THE COURT
John S. Lansden, J.
In this alleged month to month holdover proceeding, both *987 sides were represented by counsel. The court notes that respondent Conty was the only respondent to appear and the trial was deemed an inquest as to the non-appearing respondents. It is largely undisputed that petitioner is the owner of the subject premises. It is undisputed that respondent Conty became a tenant pursuant to an oral agreement about 12 or 13 years ago.
Petitioner asserted that there have been and are five residential units in the subject building. There is, according to the testimony, one unit on the first floor and two units on both the second and third floors. The testimony was that this has been the layout of the subject building since petitioner became the owner.
Respondent Conty asserted that there were six units in the premises when she first occupied her unit more than 10 years ago. According to respondent, there were two units on all three floors. She asserted that she has been inside both units on the first floor. She further asserted that once the tenants of both apartments on the first floor left, both units were combined into a single unit. Respondent asserted that even though it has been a long time since there were six units, she is a rent-stabilized tenant and not subject to a month to month holdover proceeding.
In support of her position, Conty offered into evidence a violation (violation No. 34534431J) from the Department of Buildings (hereinafter DOB) dated August 8, 2006 indicating that the apartments on the third floor had been altered to include a second unit in each apartment. The violation asserted that the third floor apartments were being used as single room occupancies (SROs) containing a “key locking device (beds, tv, personal effects, dressers, etc.). SROs share kitchen and bathroom in the respective apartments. Note (1) SRO in apt 1L and one SRO in apt 1R.”
On cross-examination, Conty acknowledged that she could not remember the names of any tenants or occupants on the first floor. Nor did she recall if the units had a single designation or two designations or when she entered the alleged first floor units. Initially, she thought she only saw a single bathroom and kitchen but reversed herself to state that there were two bathrooms, kitchens and living rooms on the first floor. Further, Conty acknowledged that while there were two apartments on the first floor, she did not know how many families lived in each apartment or if there was a single family occupying a single apartment.
*988 On rebuttal, petitioner denied that there was ever more than a single unit on the first floor. He asserted that there was only a single door to his apartment. Petitioner asserted that the tenants on the third floor and the tenant who resided on the first floor prior to his buying the building installed locks on rooms/ doors. He further asserted that when the DOB informed him of the situation, he requested the tenants correct it. On cross-examination, petitioner acknowledged that the violations were not certified as corrected for six years. Petitioner stated that he was not aware of how to correct the violation and it was only corrected after he hired someone to assist him. Ultimately, when the violation was “corrected” with DOB, petitioner paid a fine and signed the necessary documents.
At the conclusion of this rebuttal testimony, petitioner rested. The court reserved decision and directed that posttrial memos be submitted.
Analysis
To a large extent, this issue is a matter of credibility. Each side has presented only a single witness. Clearly, each side’s witness had a vested interest in the outcome of this proceeding. Further, the ramifications of any decision by the court will be hard felt by the unsuccessful party.
If respondent is unsuccessful, she will be evicted from an apartment she has resided in for a long time. If petitioner is the unsuccessful party, he will be forced to retain respondent as a tenant pursuant to the Rent Stabilization Law and petitioner may find himself either unable to collect rent or the subject of an overcharge complaint.
Though neither witness’s testimony was particularly compelling, the DOB violation from 2006 was compelling. Said violation set forth that there were 10 units in the subject building at the time of the inspection. The violations observed were that there were four units on the second floor and four units on the first floor. When factoring in that there is a third floor containing residential units, this leads to the conclusion that in 2006 there were 10 residential units in the subject building.
Said DOB violation flatly contradicted petitioner’s claim that there have been only five units in the subject building since he purchased it. Petitioner purchased the building in 1999. Yet, in 2006, these violations issued. The court notes that in the motion papers contained in the court file, there is an affidavit from one of the tenants of a third floor apartment acknowledging that he installed a lock on the door to create some privacy for him and *989 his wife but was not renting out a room. While this might create an issue as to one apartment, petitioner failed to present any witnesses relating to any other units in the building.
Case law has held that once a building contains six or more units, absent some other exemption, all units in that building become rent stabilized regardless of when the sixth unit is created. (Wilson v One Ten Duane St. Realty Co., 123 AD2d 198 [1st Dept 1987].) Whether or not the building is capable of being legally used as a six or more unit dwelling or whether the units in existence meet applicable code is not a question that trumps the question of coverage under rent stabilization. (Robrish v Watson, 48 Misc 3d 143[A], 2015 NY Slip Op 51299[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015]; 124 Meserole, LLC v Recko, 55 Misc 3d 146[A], 2017 NY Slip Op 50686[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2017].) Rather it appears to be the use of the units as living space that is the primary question to determine regulatory status.
Relevant case law takes a severe and pointed position on the issue of rent stabilization in that even if the landlord or its agents did not create the extra units, the building will be subject to rent stabilization if there is at least a sixth unit used for living purposes. (R.G.P. Mgt. & Realty Corp. v Jones, NYLJ, July 26, 2017 [Civ Ct, Kings County, Sikowitz, J., L&T 071656-2016].) Nor is a landlord’s knowledge of the extra units necessary for the building to be subject to rent stabilization. (Joe Lebnan, LLC v Oliva, 39 Misc 3d 31, 32 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2013].) Even after the number of units is reduced to below six, the rent-stabilized status of the remaining units continues. (Rashid v Cancel, 9 Misc 3d 130[A], 2005 NY Slip Op 51585 [U] [App Term, 2d Dept, 2d & 11th Jud Dists 2005].)
It is unclear if petitioner created the extra units. It is clear that petitioner had knowledge of the units and did nothing for many years to correct the issue. The law requires prompt action on the part of the landlord to remove the extra living spaces to avoid all units becoming subject to rent stabilization.
Conclusion
Based on the foregoing, the court finds that respondent is a rent-stabilized tenant and the proceeding is dismissed. A 30 day holdover will not stand where the subject apartment is subject to rent stabilization.